**UNITED STATES of America, Libelant,**

v.

**100 PIECES, MORE OR LESS, STYLE 200, ARTIFICIAL KNEES, and 199 Pieces, More or Less, Style 205, Artificial Knees, Respondent.**

**Civ. No. 65-1729-TC.**

United States District Court
C. D. California.

April 17, 1968.

**410**

Wm. Matthew Byrne, Jr., U. S. Atty., for the Central District of California, by Frederick M. Brosio, Jr., Asst. U. S. Atty., Chief of Civil Division, and Larry L. Dier, Asst. U. S. Atty., Los Angeles, Cal., for libelant.

Robert Glenn White, of Glad & Tuttle, Los Angeles, Cal., for claimant.

## MEMORANDUM OPINION

THURMOND CLARKE, Chief Judge.

This is an action for forfeiture of certain orthopedic devices. The Government, in its libel of information, alleges the claimant Eugene Wagner introduced the devices into commerce of the United States by means of false statements as to the country of origin. The claimant's position is that the country of origin was correctly designated.

The libeled merchandise consists of 299 artificial knees from a shipment of 300 sent from Sissach, Switzerland, and ultimately received at claimant's place of business in Salt Lake City, Utah. (One of the devices had been sold prior to commencement of forfeiture proceedings.)

Each of the artificial knees consists of shaped wooden parts, joined at the axis by an apparatus which simulates the motion of the human knee joint. The claimant in his testimony described "the heart of the knee mechanism" as consisting of two levers, a swing axis, and screws.

The claimant testified the wooden portions originated in East Germany; these parts were shipped to Switzerland in unfinished form, with metal braces attached to the wood but with the remaining metal parts unassembled.

Claimant further testified the rough wooden parts were shaped and sanded in Switzerland, this operation resulting in removal of up to one-quarter inch of the surface wood; a felt cone was placed between the wooden parts; rubber shock absorbers were supplied; the original metal parts were replaced with identical metal components manufactured in Switzerland; the devices were then shipped to the United States under invoices designating Switzerland as the country of origin.

Essentially this court is called upon to determine whether the country of origin is Switzerland or East Germany.

"Country of origin" is defined thus in 19 CFR § 11.8(c):

"The country of manufacture or production shall be considered the country of origin. Further work or material added to an article in another country must affect a substantial transformation in order to render such other country the 'country of origin' within the meaning of this section."

In the instant case, claimant argues that the work of shaping the devices and the insertion of new metal parts wrought such a substantial transformation as to render the devices products of Switzerland.

Only a modicum of reported cases and Treasury decisions have construed the phrase "country of origin" as it relates to customs duties.

United States v. Mersky, 361 U.S. 431, 80 S.Ct. 459, 4 L.Ed.2d 423 (1960), relates to criminal charges arising from

removal of "country of origin" labels. United States v. Friedlaender & Co., 27 C.C.P.A. 297 (1940), is based on change in the government of the country of origin rather than change in the goods themselves. The court finds neither of these frequently-cited decisions apposite to the present controversy.

Claimant cites Protest of Marshall Field & Co., T.D. 47984, 46 Treas.Dec. 683 (1924), which holds, with neither discussion nor citation of authority, that vacuum bottles exported to India and decorated, then shipped back into the United States, were importations from India.

Loblaw v. United States, T.D. 46760, 64 Treas.Dec. 605 (1933), found England remained the country of origin of truck chassis made in England and repaired in Canada by use of English parts. In the instant case, the substituted parts originated in the country where the final work was done.

In other instances, goods have been trans-shipped without additional work being done in the second country (Reichenbach & Co., Inc. v. United States, 1 Cust.Ct. 430) or after being repackaged (Closset & Devers v. United States, T.D. 37655, 73 Treas.Dec. 1112).

A more nearly analogous case is Parodi Erminio & Co. v. United States, 6 C.C.R. 288, CD 485 (1941), wherein olive oil produced in Spain was shipped to France, filtered and placed in drums, then shipped to the United States. In holding Spain remained the country of origin, the opinion states:

"The question arises as to whether the filtering process makes the oil a manufacture of France. We are of the opinion that it does not. It was still olive oil after that process and was not a different commodity. * * "

Paraphrasing the language of the last-quoted decision, this court finds the artificial knees were still essentially the same devices after work had been performed on them in Switzerland. The court finds there was no such substantial transformation as would render them products of Switzerland. The devices therefore are subject to forfeiture under provisions of 19 U.S.C. § 1592.

Counsel for the United States will prepare findings of fact and conclusions of law and judgment accordingly.